# THE PREROGATIVE COURT

OF

## THE STATE OF NEW JERSEY.

### OCTOBER TERM, 1878.

THEODORE RUNYON, ESQ., ORDINARY.

JACOB H. VANDERBECK, executor, appellant,

*v.*

HENRY H. VANDERBECK, respondent.

The delivery of a note by the holder to the maker, with intent thereby to discharge the debt, does discharge it.

On appeal from decree of Bergen orphans court.

*Mr. G. Ackerson, Jr.*, for appellant.

*Mr. A. Benedict*, for respondent.

THE ORDINARY.

The question argued on the hearing was, whether the respondent, Henry H. Vanderbeck, is chargeable with the amount of a certain promissory note and interest, given by him to the testator, his father, in or about 1870. The appellant alleges that the amount of the note was $1,750; that it was given to the testator for so much money lent by

him to the respondent; that the latter obtained possession of it in the life-time of his father, through an arrangement between them, by which it was delivered up to him in consideration of the delivery to his father of his title-deeds for his land, to be held as security for the payment of the debt which the note represented and the interest thereon; that his father held the deeds, accordingly, up to the time of his death; that, after his father's death, and at the time of making the inventory and appraisement, the respondent, who was one of the executors of his father's will, wrongfully took the deeds from among the testator's papers, on the occasion of their being produced by the executors to the appraisers, and has ever since retained them, denying all liability for or on account of the note, and claiming that his father forgave him the debt, and delivered the note up to him, accordingly, to be cancelled, and that his father held the deeds merely for safe-keeping and at the respondent's request.

It is clear, from the evidence, that the note in question was given up by the testator to the respondent, to be cancelled, about two years before the death of the former. It is also clear that the note was for the sum of $1,550, and not $1,750, as the appellant insists. It was given for money advanced by the testator to the respondent for part of the purchase-money of a small tract of land which the latter purchased in May, 1870, for a place of residence, from Samuel P. Bush, at the suggestion of the testator, who promised to aid him in paying for it. It appears that the respondent then contemplated removing, with his family, to Paterson, to which the testator was opposed, and urged him to buy that property. Of the purchase-money ($2,500), the respondent paid $1,000 of his own funds, and the rest he obtained from the testator, who, a few days afterwards, requested him to give him his note for the money, which was done. The respondent, on giving the note, expressed to the testator his dissatisfaction at being required to do so, saying, among other things, that he had purchased the

Vanderbeck v. Vanderbeck.

property in deference to the wishes of the testator and against his own inclination; expressed a wish that the testator would take a conveyance of the property from him, and pay him what he had contributed to the purchase-money, and added that he would not be able to pay the interest, and that his brothers and sisters would, after the testator's death, compel him to pay the note out of his share of the testator's estate. The testator replied that he would see that that did not take place, and, adding that he always had an idea of keeping the loaf under his own arm, took the note and put it in his pocket. The respondent says that he never after that spoke to the testator on the subject of the note, nor did the testator speak to him in reference to it, until the spring of the year 1873; that then the testator's wife, the respondent's mother, came to his house and told him that the testator had requested her to tell him to come down—that he was going to give him the note. He further testifies that he, accordingly, a few days afterwards, went to see his father, and that the latter called for his box of papers, which was handed to him; that he then took out the envelope containing the notes which the respondent had given him, and took from it the note of $1,550, and laid it on the table before him; that he then handed to the respondent the note for $250 (which was a note also given by the respondent to the testator), and told him to endorse the interest on it, which the respondent accordingly did, and thereupon handed him the amount of the interest, calculated at the rate of seven per cent. per annum; that the testator counted the money and returned part of it to him, saying that the other children paid him only six per cent., and that he would take no more from the respondent; that he then put that note in the envelope, and replaced it in the box, and handed the note of $1,550 to the respondent, saying, "Now I give this to you, and you can take care of it; I I give it in your hand, and you know you have it;" that thereupon the respondent's mother said to the testator; "Now, man, you must know what you are doing, for the

rest will no doubt find fault with it;" to which the testator replied: "If they don't find this note when I am gone, I don't see what they can do about it;" and that she said, in answer, that perhaps it would be better if the testator "should write something about it," to which he rejoined, "I believe I can do with my own as I will; I have written all that I think is necessary." He further says, that the testator then turned to him and said: "Now you make away with it, so that it cannot be found when I am gone, and I will risk it." The respondent took the note, and, after cutting off the upper part of it, containing the amount in figures, the stamp and the date, with a view to keeping it as a memento of his father, burnt the rest of the paper.

The respondent's wife and his mother corroborate him in these statements. His mother, who was called as a witness for the appellant, testifies that, when the testator handed the note to the respondent, she said to him: "Now, do you know what you are doing?" that he replied, "Yes, I know what I am doing;" and that she then said, "Now, don't you be too fast." She says that she might have said, "You must know what you are doing, for the rest will very likely find fault;" and she adds that he then said, in answer to her, that "he had a right to do with his own as he had a mind to." The respondent produces the strip of paper cut by him from the note. It corroborates him in his statement as to the amount. His mother, also, it may be remarked, corroborates him on that head. The respondent and his wife testify that the deeds for his property, which were in the testator's possession at the time of his death, were left with him merely for safe-keeping.

The evidence on which the appellant relies to establish an equitable mortgage, by deposit of the respondent's title-deeds, falls far short of the mark. Jacob H. Vanderbeck, indeed, testifies that when he asked the respondent what those deeds were there (in the testator's box, among the papers,) for, the respondent replied that he left them with his father for the note; but he afterwards says that what the

respondent said was, that he had offered his father his deed of the property for the note, as he could not pay the interest. This is in accordance with the testimony of the respondent, for, as before stated, he says that, in connection with the note, he offered to give up the property to his father on receiving the amount which he had contributed of his own money to the purchase.

Albert G. Zabriskie testifies to a statement voluntarily made to him, by the respondent, after the testator's death, in a casual conversation in the street, in reference to the controversy which existed between him and his brothers, in reference to the note. He says that he asked no questions of the respondent, and paid "no very particular attention" to what was said, any more than he would in any conversation which did not concern him, or in which he had no personal interest. The conversation took place about two years before the witness gave his testimony. It is not difficult to conclude, from his statement, that what was then said to him was, probably, strictly in accordance with the testimony of the respondent, and that any apparent variations are attributable to the fact that the witness had no interest in the subject of the conversation, paid no particular attention to it, and was not even seeking information on the subject of this family dispute. Under the circumstances, he could not be expected, after the lapse of so long a period, to remember even the outlines of the statement with any accuracy. The salient points of the statement, as it is remembered by the witness, appear to have been the giving up of the note by the testator to the respondent, the leaving of the deed of the Bush property with the testator, and the fact that the deed was still there when the inventory was made. He says, it may be remarked, that the respondent said that he and his father settled up those matters. The evidence, on the part of the appellant, of the statements of the testator, made by him in the absence of the respondent, and after the note had been given up, in reference to the note, and his intention to alter his will, so as to equalize the

shares of his children, in view of the advance to the respondent of the money for which that note was given, is not competent. But, if it be admitted, it is clearly of no value to the appellant, for John B. Vanderbeck says that the testator told him in April, 1875, that the deed was delivered to him to be held as security until the testator could alter his will so as to equalize the distribution of his estate among his children; while it appears that the note was given up at least a year before the testator's death, which took place in April, 1875, and that he made his last will some months after the note was given up. It was made in January, 1875. The testator's widow says that her husband had the note and the deed together, and when he gave up the note the deed was retained.

Jacob H. Vanderbeck testifies that in February, 1875, the testator told him that he had loaned the note to the respondent; that the respondent had only paid him interest on it once or twice; that he would give the respondent the note, and make it right with the other children. But it appears, clearly, that the note had been given up a year before that time.

It is unnecessary to pursue the examination of the testimony further. The evidence is that the testator, a year or two before his death, for reasons satisfactory to him, gave up to the respondent, as he of course had a right to do, the note of $1,550 to be cancelled, forgiving the debt. The delivery of a note by the holder to the maker, with intent thereby to discharge the debt, discharges the debt. 3 *Eq. Ca. Abr.* 618: *Wentz* v. *Dehaven*, 1 *Serg. & R.* 317. *In re Campbell's estate*, 7 *Pa. St.* 100. The testator had, in the wills he had made previously to that time, given to the respondent a greater share of his estate than he had given to his other children. He considered himself under special obligations to him for attentions, and he was especially indebted to him for the interest he had taken in his affairs in connection with the sale of his farm, and which had proved of great pecuniary advantage to him; for, by follow-

Vanderbeck *v.* Vanderbeck.

ing his advice, and holding his property for an advance, he had obtained a price nearly double that for which he would otherwise have sold it. After he gave up to him the note, he made his will, and, notwithstanding the fact that he had given up the note to him, he, by the will, gave to the respondent an equal share of his property with the other children. The appellant has failed to substantiate the claim set up in his answer as to the note in question. The respondent appears to have never denied, but always to have recognized, his liability on the other notes made by him, and held by the testator at the time of his death.

The proceedings in this case were taken, by petition, for the recovery of the respondent's share of his father's estate under the will. The appellant, by his answer to the petition, admits that he has had sole charge of the personal estate which was inventoried, and that the personal estate of the testator is capable of ready division or distribution, according to the directions and provisions of the will. It does not appear, by the record, whether the appellant has settled his final account or not, but no objection to a decree was made on that score before the orphans court or in this court. The orphans court decreed that it be referred to the surrogate to ascertain the sum due the petitioner, declaring that his share was one-fourth of the estate, and charging him with two notes of $250 and $50, respectively, before referred to, his liability whereon he has always recognized. No objection was made, either in the answer or on the hearing, to the regularity of the proceedings.

The decree will be affirmed, with costs.